STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 73-7-18 Vtec |
| 1472 Maple St. ZBA Appeal | DECISION ON MOTIONS |

Marc Wood seeks permit approval for the construction of a single-family home on his property located at 1472 Maple Street in Hartford, Vermont ("the Property"). As discussed further below, the Property and Mr. Wood's attempts to develop it—including his construction of an unpermitted retaining wall along the edge of the Property—have led to extensive litigation over the past twenty years.[1] The Town of Hartford ("Town") Zoning Administrator ("ZA") denied Mr. Wood's most recent application by letter, dated May 23, 2018. The Town's Zoning Board of Adjustment ("ZBA") confirmed the ZA's denial on June 6, 2018. Mr. Wood timely appealed that decision to this Court. Before us now are the parties' cross-motions for summary judgment on the threshold issue of whether the ZBA should have considered the substance of Mr. Wood's application.

Mr. Wood is represented by Brice C. Simon, Esq., in this matter. William F. Ellis, Esq., represents the Town.

**Legal Standard**

This Court evaluates motions for summary judgment under the standards set forth in V.R.C.P. 56, which are applicable to this Court through V.R.E.C.P. 5(a)(2). Under V.R.C.P. 56(a), summary judgment is only appropriate if there is no genuine dispute as to any material fact and

---

[1] Mr. Wood's efforts to develop the Property began in 1998, and they have been the subject of numerous appeals and enforcement actions in numerous dockets before this and the Vermont Supreme Court. We do not again recite the full history of the protracted litigation between Mr. Wood and the Town of Hartford. For a more complete procedural summary, see Town of Hartford v. Wood & Wood NOV & Permit Appeals, Nos. 1-1-11 Vtec, 138-8-10 Vtec, slip op. at 2-15 (Vt. Super. Ct. Envtl. Div. Sept. 19, 2018) (Durkin, J.). See also Town of Hartford v. Wood & Wood NOV & Permit Appeals, Nos. 1-1-11 Vtec, 138-8-10 Vtec, slip op. at 1-4 (June 1, 2018); In re Wood NOV & Permit Applications, 2013 VT 40, ¶¶ 2-29, 194 Vt. 190.

the moving party is entitled to judgment as a matter of law. In assessing whether a factual dispute exists, this Court accepts all factual allegations made in opposition to the motion as true if they are supported by affidavits or other evidentiary material. V.R.C.P. 56(c); White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). Further, when parties file cross-motions, the Court considers each motion independently and resolves all reasonable doubts and inferences in favor of the non-moving party. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

**Factual Background**

We include the following material facts solely for the purpose of deciding the pending cross-motions. These are not factual findings, which can only be reached following a trial. See Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (citing Booska v. Hubbard Ins. Agency, Inc., 160 Vt. 305, 309 (1993)). However, we note that some of these facts have become established over the long course of the related proceedings, including in trials before this Court, and the parties incorporate them by reference to prior opinions of the Court.

1.     Mr. Wood began developing the Property—located at 1472 Maple Street in Hartford, Vermont, along Vermont Route 14—sometime in 1998.[2]

2.     Since, his development projects, both those proposed and those carried out, have served as the subject of multiple appeals and enforcement actions before this and the Vermont Supreme Court.

3.     There is a retaining wall on the Property. It has been at the center of much of this litigation. The wall was thirty-feet tall at its highest point.

*The Existing Retaining Wall*

4.     The Town approved a permit for a retaining wall on October 14, 1999. The permit included detailed specifications for the concrete slabs to be used in the wall's construction, such as a minimum width requirement of eight feet for each slab.

5.     Mr. Wood proceeded to construct the wall, but did not build or use slabs as permitted.

---

[2] Mr. Wood's land is comprised of two contiguous parcels. While his various proposals for development have involved both, and the distinction has been relevant to some of the disputes that have arisen before this Court, his current proposal primarily focuses on a single parcel. Thus, we refer to the land as "the Property" in this matter for simplicity's sake.

6. This non-compliance has resulted in numerous appeals, post-judgment motions, and notices of alleged zoning violations.

7. It has led this Court to hold Mr. Wood in contempt multiple times. See, e.g., Town of Hartford v. Wood & Wood NOV Appeal & Permit Applications, Nos. 1-1-11 Vtec, 138-8-10 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Apr. 3, 2017) (Durkin, J.); see also Town of Hartford v. Wood & Wood NOV Appeal & Permit Applications, Nos. 1-1-11 Vtec, 138-8-10 Vtec at 18-19 (Sept. 19, 2018) (denying Mr. Wood's motion for post-judgment relief from the April 3, 2017 finding of contempt).

8. After a trial on multiple, coordinated matters related to development on the Property and the retaining wall, this Court issued a Corrected Merits Decision on March 27, 2012. The Decision, among other things, reaffirmed that Mr. Wood's retaining wall did not comply with its 1999 permit and created the potential for serious property loss or personal, even lethal, injury. Town of Hartford v. Wood & Wood NOV Appeal & Permit Applications, Nos. 1-1-11 Vtec, 138-8-10 Vtec at 18, 21-23 (Mar. 27, 2012).

9. Based on Mr. Wood's history of noncompliance and the severity of the zoning violations, we required him to contract with a third-party to remove the retaining wall or to do it himself with professional oversight. Id.

10. This eventually resulted in the Court-approved removal plan and slope stabilization plan ("Removal and Stabilization Plans").

11. The Vermont Supreme Court affirmed this Court's March 27, 2012 Decision on June 14, 2013. In re Wood NOV & Permit Applications, 2013 VT 40, 194 Vt. 190.

12. As of March 2019, Mr. Wood has not fully complied with the Removal and Stabilization Plans. About 40% of the retaining wall remains in place.

*The 2010 Single-Family Dwelling Application*

13. Mr. Wood first applied with the Town for a permit for a single-family dwelling on February 18, 2010 ("2010 Application").

14. The ZA denied the 2010 Application on April 22, 2010. The ZA based the denial on her conclusion that the 2010 Application was incomplete, as the proposal relied on the existing, unpermitted retaining wall.

15. The ZA went on to state that "a zoning permit for a single-family dwelling or any other use on this lot will not be complete until [] a permit is obtained for the retaining wall."

16. The ZBA upheld the ZA's decision on July 19, 2010.

17. Mr. Wood appealed that decision to this Court. We coordinated the appeal with other pending matters pertaining to Mr. Wood's development of the Property.

18. This Court's March 27, 2012 Corrected Merits Decision, referenced above, also addressed the question of the 2010 Application.

19. We concluded that the 2010 Application was incomplete because the Town reasonably declined to permit development that was conditioned on the non-compliant retaining wall. Town of Hartford v. Wood & Wood NOV Appeal & Permit Applications, Nos. 1-1-11 Vtec, 138-8-10 Vtec at 17 (Mar. 27, 2012).

20. The Vermont Supreme Court affirmed that conclusion. Wood NOV & Permit Applications, 2013 VT 40.

*The 2018 Single-Family Dwelling Application*

21. Mr. Wood submitted the present application for a single-family dwelling to the ZA on May 7, 2018 ("2018 Application").

22. The structure proposed in the 2018 Application relies on an as-yet unbuilt retaining wall that differs from the existing retaining wall in length, height, and placement. The proposed retaining wall is 100 feet long and ranges from three to eleven feet high.

23. On May 23, 2018, the ZA denied the 2018 Application.

24. The ZA based her denial on two stated grounds. First, the ZA concluded that the denial of the 2010 Application precluded the 2018 Application because no intervening change causes the 2018 Application to differ materially from the 2010 Application sufficient to overcome the successive application doctrine. Second, the ZA determined that nothing in this Court's prior orders or the Removal and Stabilization Plans permits new construction on the Property.

25. The ZBA agreed with the ZA's reasoning and confirmed the denial in a June 6, 2018 decision.

26. Mr. Wood appealed that decision to this Court on July 6, 2018.

4

**Discussion**

The parties' cross-motions require us to address both bases for the ZBA's denial of the 2018 Application. First, we consider whether the 2018 Application has changed substantially such that the successive application doctrine does not apply. Second, we consider whether anything in this Court's prior decisions or the Court-approved Removal and Stabilization Plans bars Mr. Wood from obtaining further permits for future development on his Property.

I. **Whether the successive application doctrine precludes Mr. Wood's 2018 Application.[3]**

Under the successive application doctrine, a municipal board cannot entertain a second application concerning similar development of the same property "unless a substantial change of conditions ha[s] occurred or other considerations affecting the merits of the request have intervened between the first and second application." In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 58, 199 Vt. 19 (quoting In re Carrier, 155 Vt. 152, 158 (1990)). The doctrine is codified in 24 V.S.A. § 4470(a). Applicants bear the burden of showing that any change in circumstances is substantial enough to overcome the doctrine. In re Armitage, 2006 VT 113, ¶ 4, 181 Vt. 241 (citation omitted).

A second application can be substantially changed when modified by the applicant "to respond to objections raised in the original application or when the applicant is willing to comply with conditions the commission or court is empowered to impose." Lathrop, 2015 VT 49, ¶ 58 (citation omitted). Second applications that remedy deficiencies revealed by the appeals process regularly surmount the successive application hurdle. See In re Woodstock Cmty. Tr. and Hous. Vt. PRD, 2012 VT 87, ¶¶ 10, 12, 192 Vt. 474 (citations omitted) (listing case examples).

The Town argues that the 2018 Application is substantively identical to the 2010 Application because the new proposal effectively relies on the existing, unpermitted retaining wall. The Town also appears to assert that Mr. Wood is improperly adapting the remnants of the existing retaining wall to serve as the proposed wall. Mr. Wood asserts that the 2018 Application

---

[3] While the Town alternately references the "successive application doctrine" and the "successive appeal doctrine," we can find no reference to the latter. We consider the terms synonymous for the purpose of reading the Town's filings.

is substantially different because it depends on a new retaining wall, which he included to respond to the denial of the 2010 Application.

Mr. Wood's 2010 Application was repeatedly denied as incomplete for its reliance on the existing wall. While the Town's prior decisions afforded Mr. Wood the option of remedying the incomplete 2010 Application with engineering specifications for the wall that might bring it into compliance, Mr. Wood did not submit any of the materials requested. On appeal, this Court also reached the conclusion that the 2010 Application was incomplete for its reliance on the existing wall, but further decided that a decade and more of noncompliance left us no option but to require its removal.

Mr. Wood seeks to remedy that deficiency with the 2018 Application. His proposal depends on a new wall, in response to the long history of litigation premised on the existing one. As the deficiencies surrounding the existing wall were the sole bases of the prior denial relevant to this matter, the change is sufficient to overcome the successive application doctrine. See Armitage, 2006 VT 113, ¶ 4 ("The changed-circumstances requirement is satisfied when a revised proposal addresses all concerns that prevented approval of the prior application." (citing Carrier, 155 Vt. at 159)).

Accordingly, the ZBA's decision to not review the 2018 Application on successive application grounds was improper. Mr. Wood's motion for summary judgment on this issue is **GRANTED** and the Town's is **DENIED**.

## II. Whether this Court's prior decisions or the Removal and Stabilization Plans prohibit the permitting of further development.[4]

Below, both the ZA and the ZBA concluded that this Court's prior orders and the Removal and Stabilization Plans bar further construction on the Property. The Town does not renew this argument but references it obliquely. Mr. Wood asserts that there is no bar to further permitting in these orders.

We cannot identify a requirement prohibiting Mr. Wood from applying for new permits until the Property is brought into compliance. First, the ZA's denial letter, the ZBA's decision, and

---

[4] We note that only Mr. Wood moved on this issue. The Town moved solely on the successive application doctrine and did not respond to Mr. Wood's arguments in its opposition to his cross-motion. The applicable summary judgment standards described above are not affected by this posture.

the Town's response do not identify a specific provision in the applicable orders that bars Mr. Wood from obtaining a permit. Our review reveals none. We will not read conditions into our prior orders that are not stated expressly. See, e.g., In re Stowe Highlands Merger/Subdivision Application, 2013 VT 4, ¶¶ 6, 12, 193 Vt. 142 (affirming this Court's conclusion that it was not appropriate to read an implicit condition limiting development into the permit).

Second, the Town's primary concern appears to be that Mr. Wood will treat any future wall-related permit as a license to avoid compliance with his obligations to remove the existing wall under this Court's prior orders. That is not the case. Mr. Wood must comply with our prior orders to their full extent.[5] Nothing in those orders, however, prevents him from obtaining a permit that allows separate, prospective construction. Any potential noncompliance with those orders (or future permits) must be addressed with an enforcement action, not the preemptive rejection of a permit.

Accordingly, Mr. Wood's motion for summary judgment is **GRANTED** on this issue. Because the ZBA did not further evaluate the 2018 Application or reach its merits, we **REMAND** to allow it to proceed with its review.[6]

---

[5] This includes the Removal and Stabilization Plans. It also includes Condition C of our March 27, 2012 Corrected Decision on the Merits, which, while conditioning future development of the Property, does not prohibit further permitting. Condition C states:

> As a consequence of the zoning violations they committed or allowed to be committed on their Diner and Club Parcels, Marc and Susan Wood are hereby ORDERED to immediately cease all construction activities and other development on their Parcels and not begin any development on those Parcels without first consulting with the Town of Hartford Zoning Administrator to determine if a zoning permit is required for their proposed activities. If a permit is necessary, Marc and Susan Wood cannot begin such development without first submitting a complete application for a zoning permit to the Town of Hartford Zoning Administrator or the appropriate municipal panel and receiving the necessary permits. Any future development on these Parcels shall only occur in strict conformity with any issued and outstanding zoning permits.

Town of Hartford v. Wood & Wood NOV Appeal & Permit Applications, Nos. 1-1-11 Vtec, 138-8-10 Vtec at 21 (Mar. 27, 2012).

[6] Pursuant to V.R.E.C.P. 5(j), this Court has the ability to remand a matter for further proceedings consistent with the Court order. Because this Court has limited appellate jurisdiction, a remand is necessary here to ensure that "the tribunal below has fulfilled its important responsibility of hearing new applications in the first instance." In re Killington Resort Pkg. Project Act 250 Permit Application, No. 173-12-13 Vtec, slip op. at 4-5 (Vt. Super. Ct. Envtl. Div. Jan. 28, 2015) (Durkin, J.) (citing In re Torres, 154 Vt. 233, 236 (1990)). Further, while this Court can remand on its own, Mr. Wood requested that this Court remand the matter in his motion.

## Conclusion

The 2010 Application relied on an unpermitted, non-conforming retaining wall. Mr. Wood altered the present application to include a new wall in response to that flaw. With this substantial change, the successive application doctrine does not bar his current application. We therefore **GRANT** Mr. Wood's summary judgment motion and **DENY** the Town's on this issue.

Further, there is no condition in this Court's prior orders or the Removal and Stabilization Plans that prohibits the permitting of future development on the Property before Mr. Wood complies with those orders. We therefore **GRANT** Mr. Wood's motion on this point.

Because the ZBA denied Mr. Wood's application on these two grounds without considering the proposal further, we **REMAND** the matter to the ZBA to allow it to proceed with its review. The ZBA should evaluate conditions that may be appropriate should it approve the merits of the current application, consider whether the proposed retaining wall requires a separate permit, and determine what supporting materials may be necessary to ensure compliance with the Town's Zoning Regulations.

Based on this Court's practical experience with Mr. Wood and the new development he proposes for his Property, we are sensitive to the Town's concerns and consider it necessary to further emphasize certain implications of this Decision. We are in no way altering or overriding our prior decisions, or the Removal and Stabilization Plans. Mr. Wood must comply with all previous Court directives to their fullest extent. We have already determined that the existing wall must be removed. If this matter results in a permit approval, that permit is not an amendment to Mr. Wood's previous submissions regarding the existing retaining wall, or a short-cut or work-around permitting him to leave up any part of the existing wall. He must restore the Property to the condition specified in the Removal and Stabilization Plans and begin any future wall from scratch in compliance with the relevant regulations.

Further, should a permit based on the 2018 Application issue, Mr. Wood must comply with its requirements to the letter. We will have no tolerance for further subversion of this Court's orders or any future permits. Mr. Wood should view this as an opportunity to bring the Property into compliance and to leave behind the acrimony and burdens that this long-lasting litigation has entailed.

This concludes the proceedings before this Court. A Judgment Order accompanies this Decision.

Electronically signed on May 15, 2019 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division