STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 11-2-16 Vtec |
| 110 East Spring Street CU | DECISION ON MOTION |

Pending before the Court is Appellant Chittenden Housing Corporation's motion for a stay of construction and Applicants John and Mary Wilson and Steven Polli's cross-motion to dismiss Appellant for lack of standing. The underlying matter is an appeal of a decision by the Development Review Board (DRB) of the City of Winooski approving Applicants' conditional use permit to convert their commercial building at 110 East Spring Street into a five-unit residential apartment building (the Project). The Project entails interior and exterior renovations to the existing structure; adding eight parking spaces to Applicants' property, two in front and six in back; and construction of an elevated access road running from Applicants' property to East Spring Street. The proposed access road will run across the northwest corner of Appellant's property, over a right-of-way Appellant's predecessor in title granted Applicants' predecessor in title in the late 1960s. Applicants currently use the right-of-way once or twice a year for property maintenance. At its closest point, the proposed road will run within 15 feet of Appellant's building.

**DISCUSSION**

**I.        Motion to Dismiss for Lack of Standing**

Applicants argue that Appellant lacks statutory and constitutional standing to bring this appeal. Because constitutional standing is jurisdictional, we treat a motion to dismiss for lack of standing as motion to dismiss for lack of subject matter jurisdiction under V.R.C.P. 12(b)(1). See In re Goddard College Conditional Use, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.). We will therefore "accept as true all uncontroverted factual allegations, and we will construe those factual allegations in the light most favorable to the nonmoving party." Id.

Vermont courts only have jurisdiction over "cases and controversies." Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235. A case or controversy is only present when a plaintiff or intervenor has constitutional standing to bring its claim. Id. To demonstrate standing, a party must show (1) a concrete and particularized injury (2) caused by the other party's allegedly wrongful conduct (3) that is capable of redress by the court. Parker v. Town of Milton, 169 Vt. 74, 77 (1998).

The purpose of the constitutional case or controversy requirement is to confine the judiciary to its proper role, and to prevent it from becoming a free-roaming auditor of legislative and executive action. See id. To further advance this policy, courts enforce self-imposed "prudential" standing requirements in addition to the core requirements of constitutional standing. See Franklin Cnty. Sheriff's Office v. St. Albans City Police Dept., 2012 VT 62, ¶ 12, 192 Vt. 188. To have prudential standing, a party's claimed injury must fall into the "zone of interests" protected by the substantive law invoked. Id.

The statutory requirements for standing in appeals of municipal decisions reflect these constitutional and prudential requirements. Under 24 V.S.A. § 4471, an "interested person" who has participated in the proceedings below may appeal a decision to the Environmental Division. An interested person is defined as, in relevant part:

> A person owning or occupying property in the immediate neighborhood of a property that is the subject of any decision or act taken under this chapter, who can demonstrate a physical or environmental impact on the person's interest under the criteria reviewed, and who alleges that the decision or act, if confirmed, will not be in accord with the policies, purposes, or terms of the plan or bylaw of that municipality.[1]

24 V.S.A. § 4465(b)(3).

Under the Winooski Zoning Ordinance, the criteria relevant to conditional use review include whether a proposed development will have an undue adverse effect on the character of the area; whether it will have an undue adverse effect on traffic and roads; whether it will

---

[1] Applicants argue that, "[b]ecause in conditional use cases the adverse impacts test prohibits only substantial and material adverse effects the particularized impact on the appellant's asserted personal interest must be substantial and material." See Applicants' Cross-Motion to Dismiss Appeal for a Lack of Standing at 1, filed Feb. 19, 2016 (citation omitted). But this conclusion does not follow: the standard for showing "particularized impacts" under the standing doctrine is not automatically the same as the standard for showing environmental impacts under the applicable substantive law. For instance, an interested party objecting to traffic under Criterion 9(K) need not show that traffic will "materially jeopardize" her interest in order to establish standing, even though this is the substantive standard under Criterion 9(K). For a more extreme example, a plaintiff-intervenor in a federal Clean Water Act suit must still show a particularized interest, even though the Clean Water Act is a strict liability statute, and no proof of impacts at all is required to make out a substantive claim of violation.

reduce the capacity of the land to hold water; whether it will have an undue adverse effect on the scenic or natural beauty or the area, historic sites, or rare and irreplaceable natural areas; and whether the project is in compliance with other zoning and subdivision regulations. See Ordinance § 8.102, Appellant's Mot. for Stay, app. I, filed Feb. 11, 2016.

Appellant's chief objection to the Project is Applicants' proposal to build a road across Appellant's property. The right-of-way across Appellant's property is currently blocked by a fence (which Appellant lawfully installed) for most of the year. There is no curb cut on East Spring Street, and Applicants currently use the right of way only once or twice a year for property maintenance. To build the proposed road, Applicants will build up an embankment, install retaining walls, and pave the road. Applicants also propose to build an opaque safety fence on the side of the road closest to Appellant's building. The access road will connect to East Spring Street at a 36.5 degree angle, and will require a 35-foot curb cut. At its closest point, the road will run within 15 feet of Appellant's building, directly outside the windows of Appellant's lower-level tenants.

Appellant argues that, if the elevated roadway and safety fence are constructed, tenants in the lower floors of Appellant's building will lose their view, and will only be able to see the fence and road. Should the connection to East Spring Street prove unsafe, Appellant fears that cars in traffic accidents on East Spring Street may roll down the embankment into Appellant's building. Appellant alleges that the elevated roadway over Appellant's land will reduce the capacity of the land to hold water, and may cause stormwater to run down the access road embankment towards Appellant's building. Appellant also argues that the access road will effectively cut off its access to the northwestern corner of its property. Finally, Appellant objects to the proposed parking area, arguing that it may affect the historic character of the area.

All of these impacts would have a direct, concrete, and particularized impact on Appellant, and all of these impacts are relevant to criteria for conditional use review, namely: the general and historic character of the area; safety of traffic and roads; and the capacity of the land to hold water.[2]

---

[2] In its reply to Applicants' cross-motion, Appellant cites cases from other jurisdictions stating that the "zone of interests" protected by municipal zoning laws is broad, and it includes any interest protected under the general purpose of municipal zoning. The words "under the criteria reviewed" suggest that the statutory standard

3

Applicants argue that Appellant's identified interests are no more than "generalized grievances." We disagree. Appellant may argue against the Project on the general basis that it does not conform to the town bylaws, but its grievance is specific and concrete: the Project, as proposed, may affect the general and historic character of the area, and Appellant is a primary beneficiary of that character; may adversely affect traffic safety outside its building, endangering Appellant's tenants; and may compromise its land's ability to hold water, endangering Appellant's building. Indeed, as the fee simple owner of the land on which Applicant proposes to build a road, it is difficult to imagine a party with a more particularized interest in the Project than Appellant.[3]

Applicants imply, by the structure of their memorandum, that Appellant must have standing to assert each individual argument against the Project, i.e., that it can only challenge particular aspects of the Project's noncompliance if those instances of noncompliance particularly impact Appellant. We disagree. The prudential standing doctrine broadly limits the substantive law Appellant may invoke to attack the Project. But, having established particularized interests protected by the conditional use criteria, Appellant may challenge the Project's general compliance with conditional use standards without particular reference to its own interests at every rhetorical turn.

Finally, Applicants argue that Appellant fails the "causation" and "redressability" elements of standing because Appellant's injuries are "a self-created consequence of the location of the easement granted." In other words, Applicants argue that the root cause of Appellant's injuries is the right-of-way and its location, not Applicant's proposed Project. But all of the injuries Appellant has identified come from Applicants' proposal to build an access way, not from the fact that Applicants have a right-of-way. If the proposed access way is not built,

_____

for prudential standing is more limited in Vermont. See 24 V.S.A. § 4465(b)(3). We need not address the issue, however, since Appellant's cited interests fall squarely under the criteria relevant to conditional use approval.

[3] In their motion, Applicants appear to argue that Appellant's status as the servient estate holder disqualifies it from bringing this appeal, under a theory that servient estate holders owe a duty not to interfere in dominant estate holders' zoning applications. See Applicants' Cross-Mot. to Dismiss Appeal for Lack of Standing, at 4, filed Feb. 19, 2016 (citing Sweezey v. Neel, 2006 VT 38, ¶¶ 27–28, 179 Vt. 507). It is unclear whether Applicant argues that this duty undermines Appellant's standing or whether Applicants seek dismissal on a separate, estoppel-type basis. As to the former, even if Appellant had some legal duty not to appeal, that would not undermine its constitutional, prudential, or statutory standing. As to the latter, we will not address the argument in this appeal because such duty would arise out of property rights, and is beyond our jurisdiction to consider. See In re Frantz Waste Water & Water Supply Permit, No. 173-10-10 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. July 6, 2012). If such a duty exists, the proper course is to seek an injunction in the Civil Division.

Appellant's injuries will be redressed. Appellant therefore meets the causation and redressability elements.

Because we find that the Project does pose a risk of a concrete, particularized injury to Appellant's identified interests "under the criteria reviewed" for conditional use approval, see 24 V.S.A. § 4465(b)(4), we **DENY** Applicants' motion to dismiss for lack of standing.

**II.    Motion to Stay**

Appellant has moved to stay construction of the Project during the pendency of this appeal. In their cross-motion, Applicants focus exclusively on standing, and do not offer any argument against the motion to stay.[4] Under V.R.E.C.P. 5(e), the Court may "on its own motion, or on motion of a party, stay the act or decision and make such other orders as are necessary to preserve the rights of the parties upon such terms and conditions as are just." In deciding whether to grant a stay, the Court must consider four factors: (1) likelihood of success on the merits; (2) irreparable harm to the moving party should the stay be denied; (3) substantial harm to other parties should the stay be granted; and (4) the best interests of the public. In re Tariff Filing of New England Tel. and Tel. Co., 145 Vt. 309, 311 (1984). These are the same factors used in deciding whether to grant preliminary injunctions under the civil rules. See In re J.G., 160 Vt. 250, 255 n.2 (1993). As with preliminary injunctions, a stay pending appeal is an extraordinary remedy appropriate only when the movant's right to relief is clear. In re Howard Ctr. Renovation Permit, No. 12-1-13 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2013) (Walsh, J.).

*a.    Likelihood of Success on the Merits*

The first prong of the test for a stay is the most critical in the sense that, if the movant's appeal is plainly unlikely to succeed, that will have great weight in our decision. Cf. In re Search Warrants, 2011 VT 88, ¶ 4, 190 Vt. 572 (Dooley, J., dissenting). But that does not mean we examine likelihood of success in great detail—to do so would run the risk of trying the merits in the early stages of litigation. See In re Howard Ctr. Renovation Permit, No. 12-1-13 Vtec, slip

---

[4] Applicants response to Appellant's motion to stay simply said, "The applicants Mary and John Wilson and Steven Polli objection [sic] to CHC's *Motion for Stay* for the reasons set forth in their *Cross Motion to Dismiss for Lack of Standing* and the supporting *Memorandum of Law*." Applicants' Opp. to Mot. to for Stay at 1, filed Feb. 19, 2016. The cross-motion to dismiss for lack of standing did not outline any reasons why the stay should be denied.

op. at 2 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2013) (Walsh, J.). Thus, we emphasize that our discussion of the merits under this prong is not binding, and is relevant to this motion only. See In re Allen Road Land Co., Act 250 Permit, Nos. 62-4-11, 63-4-11 Vtec, slip op. at 6 (Vt. Super Ct. Envtl. Div. July 6, 2011) (Durkin, J.).

Appellant argues that the Project does not comply with the off-street parking requirements in the Winooski Zoning Ordinance, see §§ 9.302–02, in that: (1) the off-street parking requirements require parking area access roads to be perpendicular to streets and have curb cuts no wider than 25 feet, and the proposed access way meets East Spring Street at an acute angle with a 35-foot curb cut; (2) the front parking violates the applicable setback; (3) four of the eight parking spaces are less than the required 18 feet long; (4) the drive aisle in the parking area is only 14 feet wide in places, and the Ordinance requires it to be 20 feet wide.

In its motion, Appellant anticipates, based on the reasoning in the DRB's decision, that Applicants will argue that the access way is a lawful nonconforming use and that its parking lot should be excused from the setback and dimensional requirements for general policy reasons.

It is unlikely that the access road is excused from meeting the off-street parking requirements because it is a nonconforming use. First, the existing right-of-way likely does not meet the definition of a nonconforming use or structure. The Zoning Ordinance defines "nonconforming use" as "[a] use of land or structure which does not comply with one or more zoning regulations enumerated in this regulation but where such use conformed to all applicable laws, ordinances, and regulations prior to the enactment of these regulations." Ordinance § 2.040. There is no indication that the present use of the right-of-way violates any provision of the Ordinance—it is a fully complying, lawful use. Applicants' property will only be nonconforming if it is allowed to convert its building to residential apartments *without* creating an access road.

Second, even if the right-of-way were a nonconforming use, the proposed changes to the right-of-way would not be allowed. Under the Ordinance, "non-conforming uses and non-complying structures may not be altered, moved, enlarged, extended or reconstructed." Ordinance § 8.402. Applicants propose to add a substantial curb cut, an elevated roadway, and a retaining wall to the right-of-way, and they propose to go from using the right-of-way once or twice a year to daily use. This is a substantial expansion, and would not be allowed under the Ordinance's nonconforming use provisions.

6

As to the setback and dimensional requirements, the DRB appeared to interpret the statute that authorizes towns to implement off-street parking requirements, see 24 V.S.A. § 4414(4)–(5), to allow towns to deviate from those requirements on a case-by-case basis. This is a misreading of the statute. The statute authorizes towns to establish off-street parking requirements that "vary by district and by uses within each district." Id. § 4414(4). It does not authorize towns to vary these requirements for individual *applications*. The Town also appeared to excuse the parking area's noncompliance because the DRB found that the parking was not an "unhealthy or objectionable use" under Section 9.000 of the Ordinance. But that provision is plainly a complement, not a substitute, for other, more specific performance standards in the Ordinance. Applicants have offered no other reason why the parking layout for the Project should be excused from the off-street parking requirements in the Ordinance. Appellant has therefore demonstrated a strong likelihood of success on the merits.

### b. Irreparable Harm

In order to stay construction pending appeal, we must find that Appellant will suffer "irreparable harm" if a stay is not granted. In re Tariff Filing of New England Tel. and Tel. Co., 145 Vt. 309, 311 (1984). Harm is "irreparable" only when the "the threatened harm would impair the court's ability to grant an effective remedy." 11A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2948.1 (discussing elements for grant of preliminary injunction). Thus, if a movant has an alternative, monetary remedy for the threatened harm, the harm is not irreparable. Id.

Appellant argues that the construction itself—which will take place less than 15 feet from some of Appellant's tenants' windows—would be highly disruptive to its elderly tenants. Removing the road would only prolong the harm (because it would prolong construction). The Court is not aware of any monetary remedy that could compensate Appellant for its harm, nor have Applicants offered one. This factor therefore weighs in favor of Appellant.

### c. Harm to Other Parties

In their cross-motion, Applicants offer no argument as to why a stay will harm their interests. Appellant acknowledges that there may be some harm to Applicants from delayed construction, and suggests that a stay could be limited to "work affecting [Appellant's] property."

*d.*       *Best Interests of the Public*

Appellant argues that a stay serves the best interests of the public because removing the fence and constructing the elevated road over the right-of-way poses a safety risk to traffic on East Spring Street. Applicants offer no argument to the contrary. This factor weights in favor of Appellant.

*e.*       *Conclusion*

All four factors weigh in favor of a stay and against allowing construction of the elevated access road and associated improvements while this appeal is pending. Most important to the Court's consideration is the potential for irreparable harm to Appellant's elderly tenants while the proposed roadway is constructed and, if necessary, removed. The Court therefore **GRANTS** Appellant's motion in part and **DENIES** Appellant's motion in part. The Court will stay construction on those aspects of the Project that pose the greatest threat of irreparable harm to Appellant's elderly tenants: the curb cut, removal of the fence, and elevated access road. Applicants may proceed with construction of the parking area and any alterations to the building itself while this appeal is pending. Should it prove impossible to continue construction on the parking area and building without beginning construction on the proposed access way, Applicant may move to lift this stay on grounds of necessity.

## CONCLUSION

Appellant has demonstrated constitutional, prudential, and statutory standing to bring this appeal. We therefore **DENY** Applicants' motion to dismiss for lack of standing. Appellant has demonstrated that construction of the access road and curb cut and removal of the fence may cause irreparable harm to Appellant's elderly tenants. We therefore **GRANT in part** Appellant's motion for stay with regard to these three features, and we **DENY in part** Appellant's motion with respect to construction of the parking area and building.

Electronically signed on April 22, 2016 at 11:47 AM pursuant to V.R.E.F. 7(d).

_____

Thomas G. Walsh, Judge
Superior Court, Environmental Division

8